# In the United States Court of Federal Claims

No. 15-764C

Filed March 20, 2017

|  |  |  |
|---|---|---|
| TREVOR LANGKAMP, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Motion for Summary Judgment; RCFC 56; Breach of Contract; Annuity. |
| THE UNITED STATES, | ) ) | |
| Defendant. | ) ) ) | |

*Patrick James Attridge*, Counsel of Record, King & Attridge, Rockville, MD, for plaintiff.

*Mollie L. Finnan*, Trial Attorney, *Deborah A. Bynum,* Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

## I.   INTRODUCTION

Plaintiff, Trevor Langkamp, brought this breach of contract matter alleging that the government breached a stipulation for compromise settlement that his parents entered into with the United States to resolve a personal injury lawsuit brought on his behalf (the "Settlement Agreement").  Plaintiff and the government have filed cross-motions for summary judgment on the issue of liability, pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC").  Pl. Mot.; Def. Mot.  For the reasons set forth below, the Court **DENIES** plaintiff's motion for partial summary judgment on liability and **GRANTS** the government's cross-motion for summary judgment on liability.

II.    **FACTUAL AND PROCEDURAL BACKGROUND**[1]

   A. **Factual Background**

   In this breach of contract matter, plaintiff, Trevor Langkamp, alleges that the government has breached the Settlement Agreement that his parents entered into with the United States in 1984 to resolve a personal injury lawsuit brought on Mr. Langkamp's behalf.  Specifically, plaintiff alleges that the Settlement Agreement obligates the government to make and guarantee certain structured payments provided for in the agreement.  *See* Compl. at ¶¶ 14-23.  Plaintiff further alleges that the government breached the Settlement Agreement by failing to pay or guarantee the full amount of the monthly and periodic lump-sum payments required under the Settlement Agreement after the original annuity company went into bankruptcy.  *Id.*; *see also* Def. Mot. at 1.

   As relief, plaintiff seeks to recover $68,270.78 in unpaid monthly annuity payments for the period August 2013 and June 2015.  Compl. at ¶ 15.  Plaintiff also seeks to recover a "lump sum equal to the present value of the monthly annuity payments that he is entitled to receive," for the period July 2015 through the end of his life expectancy, plus a lump sum amount equal to the present value of certain lump-sum payments due to plaintiff on December 15, 2018 and December 15, 2028.  *Id.* at ¶ 23.

   i. **The Settlement Agreement**

   The material facts of this case are not in dispute.  On April 18, 1980, plaintiff suffered certain injuries while on United States Department of the Army property.  Compl. at ¶ 3; Def. Mot. at 2.  In 1982, plaintiff's parents filed a Federal Tort Claims Act ("FTCA") claim against the United States on plaintiff's behalf to recover damages in connection with these injuries.  Def. App. at A1-A6; Compl. at ¶ 4.

   On November 15, 1984, plaintiff's parents executed the Settlement Agreement to fully resolve the claims brought in the FTCA litigation.  Def. App. at A8-A10; Compl. at ¶ 5; *see also* Def. Mot. at 3.  The Settlement Agreement provides, among other things, that the "United States

---

[1] The facts recited in this Memorandum Opinion and Order are taken from plaintiff's complaint ("Compl."); plaintiff's motion for partial summary judgment ("Pl. Mot."); the government's cross-motion for summary judgment on liability ("Def. Mot.") and exhibits attached thereto ("Def. App. at A1-A182").

of America and United States Department of Army, will pay to the plaintiffs . . . the sum of $239,425.45 as an upfront payment which includes attorney fees and costs and a structured settlement for the benefit of Trevor Langkamp, which sum shall be in full settlement and satisfaction of any and all claims . . . on account of the incident or circumstances giving rise" to the Langkamps' lawsuit.  Def. App. at A8, ¶ 2; Compl. at ¶ 5.  The Settlement Agreement also provides:

> That the aforesaid amount shall be paid as follows: $350.00 per month beginning by the beginning of January, 1985 through October 15, 1996, then $3,100.00 per month, 3 percent compounded annually for life, guaranteed for 15 years, beginning November 15, 1996, and Lump Sum Payments as follows:
>
> $        15,000.00 on December 15, 1996
>           50,000.00 on December 15, 2000
>          100,000.00 on December 15, 2008
>          250,000.00 on December 15, 2018
>        1,000,000.00 on December 15, 2028

Def. App. at A9, ¶ 3; *see* Compl. at ¶¶ 6-7.

The Settlement Agreement further provides that "plaintiffs hereby agree to accept said sum in full settlement and satisfaction of any and all claims and demands . . . which it or its agents or assigns may have against . . . the United States of America and the United States Department of Army . . . ."  Def. App. at A9, ¶ 4.

A Memorandum For File dated October 30, 1984, signed by the then-Acting Assistant Attorney General of the Civil Division of the Department of Justice provides that "[s]ettlement of this case for $400,000 in a structured settlement to be paid by the United States is hereby approved."  Def. App. at A7.  In November 1984, the United States General Accounting Office ("GAO") issued an advice of payment of settlement to accompany check certifying that $400,000 is due to plaintiff from the United States, payable from the appropriations indicated to J.M.W. Settlements, Inc. ("JMW"), on behalf of plaintiff.  *Id*. at A14.  The advice of payment of settlement to accompany check further provides that the GAO will issue two checks: a check in the amount of $160,574.55 to JMW for Trevor Langkamp and a check in the amount of $239,425.45 to Joseph P. Langkamp and Christina Langkamp, the natural guardians of Trevor Langkamp.  *Id*.

Subsequently, in December 1984, the government paid $239,425.45 to the Langkamps to fulfill the lump-sum payment requirement set forth in the Settlement Agreement.  *Id*. at A35. The government paid the remaining amount of $160,574.55 to JMW, a structured settlement broker, for the purchase of structured settlement annuities on December 5, 1984.  *Id*. at A35-A37.

### ii.   The ELNY Annuities And Bankruptcy

On November 30, 1984, JMW purchased two single premium structured settlement annuity policies from Executive Life Insurance Company of New York ("ELNY") to fund the monthly and the lump-sum payments delineated in paragraph three of the Settlement Agreement. Compl. at ¶ 8; Def. Mot. at 4; Def. App. at A9, A17-A34.  On December 7, 1984, the Langkamps executed a release in full and final satisfaction of their claims.  Def. App. at A38-A39.  Thereafter, the Langkamps and the government executed a stipulation of dismissal of the Langkamps' FTCA claim on December 10, 1984.  *Id*. at A40-A43.  The United States District Court for the Western District of Michigan dismissed the action on December 17, 1984.  *Id*. at A44.

During the period January 1985 to July 2013, plaintiff received the monthly and periodic lump-sum payments required under the Stipulation Agreement pursuant to the annuities purchased on his behalf.  *Id.* at A21, A30; Compl. at ¶ 9; Def. Mot. at 4.  On April 16, 2012, the Supreme Court of New York declared ELNY insolvent, and the court approved a restructuring agreement for ELNY (the "Restructuring Agreement").  Def. App. at A45-A51; Compl. at ¶ 10; Answer at ¶ 10.  Under the Restructuring Agreement, ELNY's assets were transferred to the Guaranty Association Benefit Company ("GABC"), and the GABC assumed responsibility for making the monthly and periodic lump-sum payments due to plaintiff.  Compl. at ¶ 10.

In letters dated November 12, 2013, and December 9, 2013, the GABC notified plaintiff that his monthly annuity payments would be reduced by 42.39%, from $4,974.59 to $2,108.73 per month.  *Id*. at ¶¶ 11-12; Def. App. at A181-A182.  In addition, the GABC notified plaintiff that the periodic lump-sum payments to be paid in December of 2018 and December 2028 would be reduced from $250,000.00 and $1,000,000.00 to $105,975.00 and $423,900.00, respectively. Compl. at ¶ 11.

The GABC began paying reduced annuity payments to plaintiff in August 2013.  Pl. Mot. at 5.  As a result, during the period August 2013 to October 2013, plaintiff received $2,108.73 in monthly annuity payments from the GABC, instead of the $4,974.59 per month payment that he would have received from ELNY.  Compl. at ¶ 12.  During the period November 2013 to October 2014, plaintiff received $2,177.99 in monthly annuity payments from the GABC, instead of the $5,123.83 per month payment that he would have received from ELNY.  *Id*.  In addition, during the period November 2014 to June 2015, plaintiff received $2,237.15 in monthly annuity payments from GABC, instead of the $5,277.54 per month payment that he would have received from ELNY.  *Id*.

## B.  Relevant Procedural Background

Plaintiff filed the complaint in this matter on July 22, 2015.  *See generally* Compl.  On November 20, 2015, the government answered the complaint.  *See generally* Answer.

On March 11, 2016, plaintiff filed a motion for partial summary judgment on liability. *See generally* Pl. Mot.  On May 27, 2016, the government filed a cross-motion for summary judgment on liability and a response and opposition to plaintiff's motion for partial summary judgment on liability.  *See generally* Def. Mot.  On July 8, 2016, plaintiff filed a response and opposition to the government's cross-motion for summary judgment on liability and a reply in support of plaintiff's motion for partial summary judgment on liability. *See generally* Pl. Reply. On September 2, 2016, the government filed a reply in support of its cross-motion for summary judgment on liability.  *See generally* Def. Reply.

On November 15, 2016, the parties filed supplemental briefs regarding the impact of the United States Court of Appeals for the Federal Circuit's decision in *Nutt v. United States,* 837 F.3d 1292 (Fed. Cir. 2016), on this matter.  *See generally* Pl. Supp. Brief; Def. Supp. Brief.  On December 6, 2016, the parties filed responsive supplemental briefs.  *See generally* Pl. Supp. Resp.; Def. Supp. Resp.  On December 20, 2016, the parties filed supplemental reply briefs.  *See generally* Pl. Supp. Reply; Def. Supp. Reply.

These matters having been fully briefed, the Court addresses the pending motions.

### III.   STANDARDS OF REVIEW

#### A.  Jurisdiction And Contract Claims Against The United States

The Tucker Act grants this Court jurisdiction to consider claims based "upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1).  The Court does not, however, possess jurisdiction to consider claims against the United States "based on contracts implied in law." *United States v. Mitchell*, 463 U.S. 206, 218 (1983) (citing *Merritt v. United States*, 267 U.S. 338, 341 (1925)); *Aboo v. United States*, 86 Fed. Cl. 618, 626 *aff'd*, 347 F. App'x 581 (Fed. Cir. 2009) (citation omitted).  And so, to bring a valid contract claim against the United States in this Court, the underlying contract must be either express or implied-in-fact. *Aboo*, 86 Fed. Cl. at 626.  Such a contract claim must also be for "actual, presently due money damages . . . ." *King v. United States*, 395 U.S. 1, 3 (1969); *see also Speed v. United States*, 97 Fed. Cl. 58, 66 (2011) (citations omitted).

In addition, plaintiff bears the burden of proving the existence of a contract with the United States, and plaintiffs must show that there is "something more than a cloud of evidence that could be consistent with a contract to prove a contract and enforceable contract rights." *D & N Bank v. United States*, 331 F.3d 1374, 1377 (Fed. Cir. 2003).  To establish the existence of either an express or implied-in-fact contract with the United States, a plaintiff must show:  (1) mutuality of intent; (2) consideration; (3) lack of ambiguity in the offer and acceptance; and (4) actual authority to bind the government in contract on the part of the government official whose conduct is relied upon. *Kam-Almaz v. United States*, 682 F.3d 1364, 1368 (Fed. Cir. 2012).  A government official's authority to bind the United States must be express or implied. *Roy v. United States*, 38 Fed. Cl. 184, 187-89, *dismissed*, 124 F.3d 224 (Fed. Cir. 1997).  And so, "the [g]overnment, unlike private parties, cannot be bound by the apparent authority of its agents." *Id.* at 187.

In this regard, a government official possesses express actual authority to bind the United States in contract "only when the Constitution, a statute, or a regulation grants it to that agent in unambiguous terms." *Jumah v. United States*, 90 Fed. Cl. 603, 612 (2009) *aff'd*, 385 F. App'x 987 (Fed. Cir. 2010) (internal citations omitted); *see also City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990).  On the other hand, a government official possesses implied actual authority to bind the United States in contract "when the employee cannot perform his

assigned tasks without such authority and when the relevant agency's regulations do not grant the authority to other agency employees." *SGS-92-X003 v. United States*, 74 Fed. Cl. 637, 652 (2006) (citations omitted); *see also Aboo*, 86 Fed. Cl. at 627 (implied actual authority "is restricted to situations where 'such authority is considered to be an integral part of the duties assigned to a [g]overnment employee'" (quoting *H. Landau & Co. v. United States*, 886 F.2d 322, 324 (Fed. Cir. 1989))).  In addition, when a government agent does not possess express or implied actual authority to bind the United States in contract, the government can still be bound by contract if the contract was ratified by an official with the necessary authority.  *Janowsky v. United States*, 133 F.3d 888, 891–92 (Fed. Cir. 1998).[2]

### B.  RCFC 56

Pursuant to RCFC 56, a party is entitled to summary judgment when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  RCFC 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Biery v. United States*, 753 F.3d 1279, 1286 (Fed. Cir. 2014).  A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  A fact is "material" if it could "affect the outcome of the suit under the governing law . . . ."  *Id*.  In addition, the moving party bears the burden of demonstrating the absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  And so, "'the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

In making a summary judgment determination, the Court does not weigh the evidence presented, but instead must "determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249; *see also Am. Ins. Co. v. United States*, 62 Fed. Cl. 151, 154 (2004); *Agosto v. INS*,

---

[2] Ratification may take place at the individual or institutional level.  *SGS-92-X003 v. United States*, 74 Fed. Cl. 637, 653-54 (2006).  Individual ratification occurs when a supervisor:  (1) possesses the actual authority to contract; (2) fully knew the material facts surrounding the unauthorized action of his or her subordinate; and (3) knowingly confirmed, adopted, or acquiesced to the unauthorized action of the subordinate.  *Id*. at 654 (quoting *Leonardo v. United States*, 63 Fed. Cl. 552, 560 (2005)).  In contrast, institutional ratification occurs when the government "seeks and receives the benefits from an otherwise unauthorized contract."  *Id*.; *see also Janowsky v. United States*, 133 F.3d 888, 891-92 (Fed. Cir. 1998).

436 U.S. 748, 756 (1978) ("[A trial] court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented . . . ."). The Court may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party . . . ." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. The above standard applies when the Court considers cross-motions for summary judgment. *Principal Life Ins. Co. & Subsidiaries v. United States*, 116 Fed. Cl. 82, 89 (2014); *see also Estate of Hevia v. Portrio Corp.*, 602 F.3d 34, 40 (1st Cir. 2010). And so, when both parties move for summary judgment, "'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Abbey v. United States*, 99 Fed. Cl. 430, 436 (2011) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

### C. Contract Interpretation

The United States Court of Appeals for the Federal Circuit has held that "[c]ontract interpretation is a question of law." *Barron Bancshares, Inc., v. United States*, 366 F.3d 1360, 1368 (Fed. Cir. 2004); *Fortec Constructors v. United States*, 760 F.2d 1288, 1291 (Fed. Cir. 1985); *Greenhill v. United States*, 92 Fed. Cl. 385, 393 (2010) ("The interpretation of a settlement agreement is a question of law."); *see also Harris v. Dep't of Veterans Affairs*, 142 F.3d 1463, 1467 (Fed. Cir. 1998) ("A settlement agreement is a contract, and we apply basic contract principles unless precluded by law."). When interpreting a contract, the Court first looks to whether the language of an agreement is ambiguous or unambiguous. *See Grumman Data Sys. Corp. v. Dalton*, 88 F.3d 990, 997 (Fed. Cir. 1996); *see also NVT Techs., Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004). It is also well established that the Court's interpretation of a contract begins with its "plain language." *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996). And so, the plain and unambiguous provisions of a contract "must be given their plain and ordinary meaning . . . and the court may not resort to extrinsic evidence to interpret them." *Id.* (citations omitted); *see also Jowett, Inc. v. United States*, 234 F.3d 1365, 1368 (Fed. Cir. 2000) (holding that the Court gives "the words of the agreement their ordinary meaning unless the parties mutually intended and agreed to an alternative meaning."); *Hills Materials Co. v. Rice*, 982 F.2d 514, 516 (Fed. Cir. 1992) ("Wherever possible, words of a contract should be given their ordinary and common meaning.") (citations omitted).

The Court also interprets the "provisions of a contract so as to make them consistent" and so as not "to render them ineffective or superfluous." *Abraham v. Rockwell Int'l. Corp.*, 326 F.3d 1242, 1251, 1254 (Fed. Cir. 2003) (citations omitted); *Fortec Constructors*, 760 F.2d at 1292 ("This court must be guided by the well accepted and basic principle that an interpretation that gives a reasonable meaning to all parts of the contract will be preferred to one that leaves portions of the contract meaningless."). But, in instances in which "there is a clear conflict between" contract clauses, the Court must "determine which of the conflicting terms controls." *Abraham*, 326 F.3d at 1253-54 (citations omitted). To do so, the Court must apply the "general rules of interpretation," which require that, "'[w]here specific and general terms in a contract are in conflict, *those which relate to a particular matter control over the more general language.*'" *Id*. at 1254 (citations omitted) (emphasis existing).

The Federal Circuit has also recognized that a contract that is reasonably susceptible to more than one interpretation is ambiguous. *Hills Materials Co.*, 982 F.2d at 516 (citations omitted). Where a latent ambiguity exists in a contract, "the court will construe the ambiguous term against the drafter of the contract when the nondrafter's interpretation is reasonable," under the general rule of *contra proferentem. Id*. (citations omitted); *see also NVT Techs, Inc.*, 370 F.3d at 1159 ("To show an ambiguity it is not enough that the parties differ in their respective interpretations . . . both interpretations must fall within the zone of reasonableness.") (citations omitted); *HPI/GSA-3C, LLC v. Perry*, 364 F.3d 1327, 1334 (Fed. Cir. 2004) ("Before a court may enforce the general rule of *contra proferentem* against the drafter of an ambiguity, the contractor's interpretation of that ambiguity must be reasonable."). But, "an exception to the general rule that requires construing ambiguities against" the drafter exists where "the ambiguities are so patent and glaring that it is unreasonable for a [party] not to discover and inquire about them." *HPI/GSA-3C, LLC*, 364 F.3d at 1334 (quotations omitted). "Where an ambiguity is not sufficiently glaring to trigger the patent ambiguity exception, it is deemed latent and the general rule of *contra proferentem* applies." *Id*. (citations omitted).

Specifically relevant to the present case, the Federal Circuit has also previously examined and interpreted settlement agreements with the United States that require future, periodic annuity payments in *Nutt v. United States* and *Massie v. United States*. In *Massie*, the appellants brought a breach of contract claim against the government alleging that the government had guaranteed the annuity payments provided for under a settlement agreement that required the government to

purchase an annuity that "will result in distributions on behalf of the United States," after the annuity company went into conservatorship and failed to make the full payments. 166 F.3d 1184, 1186-87 (Fed. Cir. 1999). The Federal Circuit observed that "[t]he language specifying that the annuity 'will result in distributions' and that the disbursements 'shall be paid' is unambiguously mandatory and says unequivocally that the Massies must receive the payments." *Id*. at 1190. And so, the Federal Circuit held that the government had guaranteed the annuity payments required under the settlement agreement. *Id*.

More recently, in *Nutt*, the Federal Circuit interpreted a settlement agreement that required the purchase of an annuity for the purpose of making certain periodic, future payments required under that agreement. 837 F.3d 1292, 1294 (Fed. Cir. 2016). After the *Nutt* appellants began receiving reduced payments under the annuity, the appellants alleged that the government had guaranteed, and thus, was liable for, the annuity payments. *Id.* The Federal Circuit noted in the decision, however, that the settlement agreement at issue specifically provided that "the United States shall assist [Plaintiffs], their heirs or personal representatives, in the prosecution of said suit to the extent permitted by applicable laws and regulations," in the event that the annuity company defaults on the annuity payments. *Id*. at 1297 (brackets existing). The Federal Circuit also held that, among other things, "[t]he plain language of the Agreement makes clear that the Government agreed to purchase annuities and pay certain lump-sum payments to Appellants, not to make future payments or guarantee that the future payments be made if the insurance company defaulted." *Id*. at 1298. And so, the Federal Circuit concluded that "the Government's obligations were satisfied upon making the lump-sum payments and purchasing the annuity." *Id*.

## IV.    LEGAL ANALYSIS

The parties have filed cross-motions for summary judgment with respect to liability on the issue of whether the government is liable to plaintiff and obligated to pay the outstanding amounts of certain monthly and periodic lump-sum payments called for under the Settlement Agreement. *See* Pl. Mot.; Def. Mot. Plaintiff argues that the government guaranteed these payments and, as a result, the government breached the Settlement Agreement by failing to pay the outstanding amounts due. *See* Pl. Mot. at 8-9. The government counters that it has not breached the Settlement Agreement because the government has not expressly guaranteed the monthly and periodic payments required under that agreement. Def. Mot. at 7-8. And so, the

government maintains that it has fully satisfied its obligations with respect to these payments by purchasing annuities for the purpose of making the payments. *Id.*

For the reasons discussed below, the plain language of the Settlement Agreement demonstrates that the government has not unequivocally agreed to guarantee the monthly and periodic lump-sum payments required under that agreement. And so, the Court **DENIES** plaintiff's motion for summary judgment on liability and **GRANTS** the government's cross-motion for summary judgment on liability.

## A. The Settlement Agreement Provides For The Purchase Of Annuities

As an initial matter, the plain language of the Settlement Agreement requires that the government purchase annuities for the purpose of making the monthly and periodic lump-sum payments called for under that agreement. The parties agree that the Settlement Agreement is unambiguous. Def. Supp. Brief at 1; Pl. Supp. Brief at 3; *Grumman Data Sys. Corp.*, 88 F.3d at 997 (demonstrating that the Court first looks to whether the language of an agreement is ambiguous or unambiguous); *NVT Techs., Inc.*, 370 F.3d at 1159 (same). And so, the Court begins its interpretation of the Settlement Agreement with the plain language of that agreement. *McAbee Constr., Inc.*, 97 F.3d at 1435; *see also Jowett, Inc.*, 234 F.3d at 1368 (holding that the Court gives "the words of the agreement their ordinary meaning unless the parties mutually intended and agreed to an alternative meaning").

In this regard, the Settlement Agreement provides, in relevant part, that:

> [The] United States of America and United States Department of Army, will pay to the [Langkamps] . . . the sum of $239,425.45 as an upfront payment which includes attorney fees and costs and a *structured settlement* for the benefit of Trevor Langkamp, which sum shall be in full settlement and satisfaction of any and all claims . . . on account of the incident or circumstances giving rise" to the Langkamps' lawsuit.

Def. App. at A8, ¶ 2 (emphasis supplied). The Settlement Agreement further provides that:

> [T]he aforesaid amount shall be paid as follows: $350.00 per month beginning by the beginning of January, 1985 through October 15, 1996, then $3,100.00 per month, 3 percent compounded annually for life, guaranteed for 15 years, beginning November 15, 1996, and Lump Sum Payments as follows:

> $      15,000.00 on December 15, 1996
> 50,000.00 on December 15, 2000
> 100,000.00 on December 15, 2008

11

250,000.00 on December 15, 2018
1,000,000.00 on December 15, 2028

Def. App. at A9, ¶ 3; *see* Compl. at ¶¶ 6-7.  The Court interprets these provisions to require that the government purchase structured settlement annuities to make the monthly and lump-sum payments delineated in the Settlement Agreement.  In this regard, the plain language of paragraph two of the Settlement Agreement provides that the government "will pay . . . a structured settlement for the benefit of Trevor Langkamp."  Def. App. at A8, ¶ 2.  The Court must give these words their ordinary meaning, absent evidence that the parties mutually intended an alternative meaning. *McAbee Constr., Inc.*, 97 F.3d at 1435; *see also Jowett, Inc.*, 234 F.3d at 1368.  A "structured settlement" is generally recognized to mean a legal settlement paid out as an annuity rather than as a lump sum. *See*, *e.g.*, 3 Stein on Personal Injury Damages Treatise § 16:1 (3d ed.) (2016) ("The payments [under a structured settlement] are normally funded using an annuity or obligations of the United States."); 1 Negotiating and Settling Tort Cases § 18:1 (providing that under a structured settlement, "[t]he defendant may retain the obligation to make the future payments, or, more commonly, it may transfer the obligation to make the future payments by purchasing an annuity contract from a life insurance company").  The Oxford Pocket Dictionary of Current English also defines the term "structured settlement" as "a legal settlement paid out as an annuity rather than in a lump sum . . . ." *The Oxford Pocket Dictionary of Current English*, available at www.encyclopedia.com/humanities/dictionaries-thesauruses-pictures-and-press-releases/structured-settlement (accessed March 17, 2017).

Because neither party argues that the parties mutually agreed to another meaning for the term structured settlement, the Court adopts the ordinary meaning of the term structured settlement—a legal settlement paid out as an annuity rather than as a lump sum–to interpret the Settlement Agreement. *See*, *e.g.*, Pl. Mot.; Def. Mot.  And so, the Court construes paragraph two of the Settlement Agreement to require that the government use a portion of the settlement proceeds to purchase structured settlement annuities for the purpose of making the payments delineated in paragraph three of that agreement.

Plaintiff's reading of the Settlement Agreement to not require that the government purchase annuities for the purpose of making the monthly and periodic lump-sum payments required under that agreement is also belied by the plain language of that agreement. *See* Pl. Mot. at 8-9.  Plaintiff correctly observes in his motion for partial summary judgment that the

word annuity does not appear in the Settlement Agreement.  *See* Pl. Mot. at 1.  But, the

Settlement Agreement, nonetheless, clearly provides that "the government will pay . . . a

structured settlement."  Def. App. at A8.  As discussed above, the Court interprets the

requirement that the government will pay a structured settlement to require that the government

purchase structured settlement annuities to make the structured payments required under that

agreement.  *See*, *e.g*., 3 Stein on Personal Injury Damages Treatise § 16:1 (3d ed.) (2016); 1

Negotiating and Settling Tort Cases § 18:1.  Given this, the Court construes the Settlement

Agreement to reflect the parties' intent for the government to purchase structured settlement

annuities for the purpose of making the monthly and periodic lump-sum payments to plaintiff.[3]

Def. App. at A9.

### B.  The Government Did Not Guarantee The Future Periodic Payments Set Forth In The Settlement Agreement

Having determined that the plain language of the Settlement Agreement requires the

government to purchase structured settlement annuities for the purpose of making the structured

payments set forth in that agreement, the Court next examines whether the government has

guaranteed these structured payments in the event of a default by the annuity company.  In his

motion for partial summary judgment on liability, plaintiff argues that the government has agreed

to pay or guarantee these monthly and periodic lump-sum payments.[4]  Pl. Mot. at 9.  The

government counters in its cross-motion that the Settlement Agreement does not include such a

guarantee and that the government has fulfilled its obligations under the agreement by

purchasing the structured settlement annuities.  *See* Def. Mot. at 7; Def. Supp. Resp. at 3.  For

the reasons discussed below, the plain language of the Settlement Agreement demonstrates that

---

[3] While the Court need not consider extrinsic evidence to interpret the unambiguous terms of the Settlement Agreement, it is noteworthy that the Court's reading of the Settlement Agreement is also supported by the undisputed material facts regarding the parties' intent in this case.  *See e.g., Greco v. Dep't of Army*, 852 F.2d 558, 560 (Fed. Cir. 1988).  It undisputed that the government paid a portion of plaintiff's settlement proceeds directly to a structured settlement broker for the purpose of purchasing structured settlement annuities to make the monthly and periodic lump-sum payments called for under that agreement.  Def. Mot. at 3-4; Pl. Reply at 5; Def. App. at A35-A37.  It is similarly without dispute that, after the structured settlement broker purchased these structured settlement annuity policies, the Langkamps released their legal claims against the government.  Def. App. at A38-A44.

[4] Plaintiff contends that the government has been in breach of this agreement since August 2013, when he first began to receive reduced annuity payments.  Compl. at ¶¶ 12-15.

the government has not guaranteed the monthly and periodic lump-sum payments required under that agreement.

First, plaintiff points to no language in the Settlement Agreement that expressly and unequivocally requires that the government guarantee the monthly and periodic lump-sum payments delineated in that agreement. *Id.* As the United States Court of Appeals for the Federal Circuit recently recognized in *Nutt,* the principle of sovereign immunity compels a finding that the agreement at issue here does not obligate the government to guarantee future payments if the government has not unequivocally promised to do so.[5]  837 F.3d at 1298.  A plain reading of the Settlement Agreement shows that the agreement does not contain such an unequivocal promise. *See* Def. App. at A8-A10.  Rather, the Settlement Agreement simply provides that the future monthly and periodic lump-sum payments to be made to plaintiff "shall be paid." *Id.* at A9.  This language does not provide that the government will guarantee−or even make−these payments. *Id.*  In fact, the use of the phrase "shall be paid" indicates that the parties intended for a third party, rather than the government, to actually make the future payments. And so, the Court does not read the plain language of the Settlement Agreement to require that the government guarantee the future payments called for under that agreement.

The Court is also unpersuaded by the other arguments that plaintiff puts forward to show that the Settlement Agreement obligates the government to guarantee his monthly and periodic lump-sum payments.  In this regard, plaintiff argues that there is no need for the Settlement Agreement to contain an unequivocal guarantee of these payments because, the Settlement Agreement does not contemplate the purchase of annuities.  Pl. Supp. Resp. at 3-4; Pl. Supp. Reply at 3.  But, as discussed above, paragraph two of the agreement clearly requires that the

---

[5] In *Nutt*, the Federal Circuit rejected the appellant's argument that the language "payments by the United States shall operate as full and complete discharge of all payments to be made" meant that the government promised to guarantee the payments resulting from the annuities at issue in that case.  837 F.3d at 1297.  The *Nutt* agreement also contained language that provided that if the insurance company defaults in making the annuity payments, "[the appellants] . . . shall have standing to sue the said insurance company for breach of contract." *Id.* at 1297.  In contrast, here, the Settlement Agreement contains no provision regarding a default by the annuity company and simply provides that "plaintiffs hereby agree to accept said sum in full settlement and satisfaction of any and all claims and demands . . . against [the government]."  Def. App. at A9, ¶ 4.

government pay for structured settlement annuities to make these payments.  And so, plaintiff's argument cannot be reconciled with the plaint text of the agreement.

Plaintiff would be, however, on somewhat firmer ground in arguing that the government has unequivocally guaranteed the payment of certain monthly payments required under the Settlement Agreement for a period of fifteen years.  Paragraph three of the agreement provides that the monthly payments called for in the Settlement Agreement are "guaranteed for 15 years." Def. App. at A9, ¶ 3; *see also Nutt*, 837 F.3d at 1299.  But, there is no dispute that this guarantee expired on November 15, 2011, and that these particular monthly payments have been paid in full by ELNY.  Compl. at ¶ 9; Def. Supp. Brief at 8-9; Def. Supp. Resp. at 3; *see* Def. App. at A9, ¶ 3.  And so, this language cannot form the basis for plaintiff's claim to recover the outstanding portion of the monthly and periodic lump-sum payments that he seeks in this dispute.

Indeed, at bottom, plaintiff points to no language in the Settlement Agreement that would expressly and unequivocally require the government to guarantee the monthly and periodic lump-sum annuity payments that he seeks to recover in this litigation.  Absent such an unequivocal promise, the Court will not read an obligation on the part of the government to guarantee these payments into the Settlement Agreement.

### C.  The Government Could Not Have Entered Into The Contract That Plaintiff Alleges

As a final matter, it is also important to note that the undisputed material facts also show that the government could not have entered into a contract that requires the government to pay more than the $400,000 disbursed at the time of settlement to resolve plaintiff's FTCA claim.  To establish the existence of either an express or implied-in-fact contract with the United States, plaintiff must show, among other things, the actual authority to bind the government in contract on the part of the government official whose conduct is relied upon.  *Kam-Almaz*, 682 F.3d at 1368.  The undisputed material facts here make clear that the Assistant United States Attorney who entered into the Settlement Agreement on behalf of the government had actual authority to settle the Langkamps' claim for $400,000.  Def. Mot. at 13; Pl. Reply at 5-6; Def. App. at A7.  It is also undisputed that the government disbursed this authorized amount in 1984, in the form of a one-time, lump-sum payment of $239,425.45 and by paying a structured settlement broker

$160,574.55 to purchase two structured settlement annuities for the benefit of plaintiff.  Def. App. at A17-A37; Compl. at ¶¶ 5-8; Def. Mot. at 4.

As the government argues in its cross-motion for summary judgment, any interpretation of a contract with the government that would result in an obligation to which the government cannot be legally bound would render the contract void and unenforceable.  Def. Mot. at 10; *see Fed. Crop Ins. Corp v. Merrill*, 332 U.S. 380, 384 (1947); *cf. Schism v. United States*, 316 F.3d 1259, 1278 (Fed. Cir. 2002) ("[A]ny private party entering into a contract with the government assumes the risk of having accurately ascertained that he who purports to act for the government does in fact act within the bounds of his authority.") (citations omitted).  And so, the government could not have entered into a contract in this case that would have obligated it to pay, or to guarantee, any amount in excess of the $400,000 authorized settlement amount to resolve the FTCA litigation brought on plaintiff's behalf.[6]

## V.   CONCLUSION

In sum, the plain language of the Settlement Agreement at issue in this dispute demonstrates that the government contracted to purchase annuities to make the future, periodic monthly and lump-sum payments required under that agreement.  The plain language of this agreement also demonstrates that the government did not unequivocally guarantee that it would make these payments in the event of a default by the annuity company.  And so, the undisputed material facts in this matter show that the government is not liable to plaintiff for the remaining annuity payments required under the agreement.

For the foregoing reasons, the Court

1.   **DENIES** plaintiff's motion for partial summary judgment on liability;

2.   **GRANTS** the government's cross-motion for summary judgment on liability; and

---

[6] Plaintiff's argument that the Court may not consider evidence regarding the Assistant United States Attorney's settlement authority because this information constitutes extrinsic evidence is also without merit.  Pl. Supp. Resp. at 4.  The Court may properly consider evidence regarding whether this government official had actual authority to enter into the Settlement Agreement, because the question of whether the Assistant United States Attorney had such authority is a threshold matter of contract formation.  *See Kam-Almaz v. United States*, 682 F.3d 1364, 1368 (Fed. Cir. 2012) (holding that, to establish the existence of an express contract, a plaintiff must demonstrate the actual authority to bind the government in contract on the part of the government official whose conduct is relied upon).

It is further **ORDERED** that the parties shall **FILE** a joint status report on or before **April 20, 2017**, stating their respective views on whether this matter should be dismissed in light of the Court's ruling on the parties' cross-motions for summary judgment on liability.

The Clerk's Office shall enter judgment accordingly.

No costs.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
Judge